J-S25033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: S.M.F | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.F., MOTHER | : | No. 383 WDA 2022 |

Appeal from the Decree Entered March 1, 2022
In the Court of Common Pleas of McKean County
Orphans' Court at No(s):  No. 42-21-0279

| IN THE INTEREST OF: B.N.F. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.F., MOTHER | : | No. 384 WDA 2022 |

Appeal from the Decree Entered March 1, 2022
In the Court of Common Pleas of McKean County
Orphans' Court at No(s):  No. 42-21-0280

BEFORE:  BENDER, P.J.E., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: AUGUST 26, 2022**

Appellant, R.F. ("Mother"), appeals from the decrees entered in the McKean County Court of Common Pleas, granting the petitions of Appellee, McKean County Children and Youth Services ("CYS"), for involuntary termination of Mother's parental rights to her minor children, S.M.F and B.N.F. ("Children").  We affirm.

The relevant facts and procedural history of this appeal are as follows. B.N.F. was born in September 2009. S.M.F. was born in October 2010. Children have had limited contact with their father, R.F. ("Father"), who separated from Mother and voluntarily relinquished his parental rights. Following the separation, Mother commenced a romantic relationship with M.F., Father's brother.

> [M.F.] has been convicted of prior criminal offenses that require him to register as a [sex] offender. He has previously been convicted of the offense of failure to register at McKean County Criminal Number 412 CR 2007. Mother has resided with [M.F.] and has allowed him to have extensive and unsupervised contact with [Children].

(Trial Court Opinion at docket No. 42-21-0279, filed 3/1/22, at 2).[1]

In April 2020, CYS received a report that M.F. was sexually abusing Children. CYS investigated the matter and filed emergency motions for protective custody of Children on April 9, 2020. The court granted these motions, and CYS later filed dependency petitions. On May 8, 2020, the court conducted a dependency hearing. At that time, the court received testimony from R.L., one of Children's uncles. (**See** N.T. Dependency Hearing, 5/8/20, at 12). R.L. testified that M.F. showed him inappropriate pictures of Children.

---

[1] We reference the court's opinion issued in conjunction with the decree that terminated Mother's parental rights to S.M.F. Further, we note that the court issued a substantially similar opinion in conjunction with the decree that terminated Mother's parental rights to B.N.F. (**See** Trial Court Opinion at docket No. 42-21-0280, filed 3/1/22, at 1-12). While the opinions contained minor differences regarding the pertinent facts for each child's case, the opinions provided the same analysis of the statutory bases for termination.

M.F. stored the pictures on his cell phone. In some of the pictures, Children were naked on a bed. (*Id.* at 17). R.L. also witnessed M.F. photographing Children while they were in the bathtub. (*Id.* at 13-14). The court credited R.L.'s testimony, despite Mother's protestations to the contrary.

A prior decision from this Court described the subsequent procedural history as follows:

> In the orders dated May 8, 2020, and entered on June 30, 2020, the trial court adjudicated the Children dependent under the Juvenile Act, 42 Pa.C.S. § 6302(1). As its disposition, the court committed the Children to the shared legal custody of [CYS] and the Parents, with physical placement of the Children in foster care with B.M.[2] Mother was to have contact with the Children only as agreed to, and as supervised by, CYS. CYS was granted the authority to approve mental health treatment for the Children, including evaluation and counseling services. Moreover, CYS was granted the authority to approve routine medical treatment for the Children and to obtain a copy of their medical records.

*Interest of S.F., B.F.*, Nos. 794, 795 WDA 2020, unpublished memorandum at 5 (Pa.Super. filed January 15, 2021). On appeal, this Court affirmed the dependency orders. *See id.*

On January 19, 2021, the court conducted a permanency review hearing. Although the court permitted Mother to continue visitation, it emphasized that M.F. was not allowed to have any contact with Children. (*See* Petitions for Involuntary Termination, filed 10/18/21, at ¶20). On October 18,

---

2 B.M. remains Children's foster mother. (*See* N.T. Termination Hearing, 2/7/22, at 63).

2021, CYS filed petitions for the involuntary termination of Mother's parental rights to Children. In the petitions, CYS alleged that Mother continued to allow M.F. to have contact with Children. CYS concluded that Mother's decision to maintain a relationship with M.F. necessitated the termination of her parental rights. The court conducted a termination hearing on February 7, 2022, at which the court received testimony from Children's therapists, the CYS caseworkers, and Children's foster mother.

On March 1, 2022, the court entered opinions and decrees terminating Mother's parental rights.[3] The court found that Mother's decision to continue her relationship with M.F. presented an impediment to reunification that could not be remedied. Mother timely filed separate notices of appeal on March 30, 2022. Mother later provided concise statements of errors complained of on appeal. This Court subsequently consolidated the appeals *sua sponte*.

Mother now raises two issues for this Court's review:

> Has the burden of proof been met by clear and convincing evidence to show that involuntary termination of parental rights of [Mother] is warranted under 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8)?
>
> Did the [trial] court err and abuse its discretion by failing to adequately consider the developmental, physical and emotional needs and welfare of [Children]?

(Mother's Brief at 4).

---

[3] The court had already terminated Father's parental rights after he filed petitions for voluntary relinquishment. (**See** Decrees, entered 2/17/22).

- 4 -

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

***In re Z.P.***, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting ***In re I.J.***, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> ***In re B.L.W.***, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> ***In re Adoption of A.C.H.***, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. ***In re J.D.W.M.***, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the

court's decision, even if the record could support an opposite result. ***In re R.L.T.M.***, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

***In re Z.P., supra*** at 1115-16 (quoting ***In re Adoption of K.J.***, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

CYS filed a petition for the involuntary termination of Mother's parental rights on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)    General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*     \*     \*

(5)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*     \*     \*

**(b)    Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

> With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(5), (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.[4]

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of … her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

On appeal, Mother contends that CYS failed to present clear and convincing evidence to support any of the statutory bases for termination of parental rights. Mother insists that she never demonstrated a settled purpose of relinquishing her parental claim, and the evidence of record demonstrates her ongoing desire to remain present in Children's lives. Regarding M.F.'s presence in her life, Mother emphasizes that "no criminal charges have been

---

[4] CYS also sought the involuntary termination of Mother's parental rights under Section 2511(a)(1), (2), and (8), but we need only analyze Section 2511(a)(5) for purposes of this appeal.

brought against [M.F.] for the alleged sexual abuse described by the [trial] court." (Mother's Brief at 10). Mother also maintains that M.F.'s prior conviction for indecent assault is twenty-five (25) years old, that offense did not involve Children, and CYS failed to prove that Mother ever left Children alone with M.F. Moreover, Mother claims that she needs M.F.'s assistance due to multiple surgeries on her foot, and M.F. will leave her residence after Mother fully recovers.

Regarding Section 2511(b), Mother argues that termination of her parental rights is not in Children's best interests. "To the contrary, testimony was presented that the children love their mother and want to maintain contact with her, and that the children were bonded to their mother." (*Id.* at 11). Mother also references a prior order from the trial court denying a motion to terminate her visitation, where the court specifically found that: 1) Children wanted to maintain contact with Mother; and 2) the foster mother did not object to such contact. Based upon the foregoing, Mother concludes the court erred and abused its discretion by terminating her parental rights. We disagree.

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118.

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of …her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide

- 9 -

for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have …her rights terminated." **In re B.L.L.**, 787 A.2d 1007, 1013 (Pa.Super. 2001). "A parent's basic constitutional right to the custody and rearing of …her child is converted, upon the failure to fulfill …her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." **In re B., N.M., supra** at 856.

Instantly, the court conducted the termination hearing on February 7, 2022. Although Children did not testify at the hearing, which occurred on a school day, the guardian *ad litem* announced that Children favored the termination of Mother's parental rights. (**See** N.T. Termination Hearing at 8-9). Thereafter, CYS presented multiple witnesses who testified about Mother's ongoing relationship with M.F. and its impact on Children. For example, the court received testimony from Kristie Murray, the CYS caseworker assigned to work with the family in April 2020. Although Mother has always sought to reunify with Children, Ms. Murray testified that Mother has continued her relationship with M.F. (**Id.** at 49).

Ms. Murray also described a pattern of behavior where Mother attempted to mislead CYS about the status of her relationship:

> [Mother] would tell me on occasion that [M.F.'s] not there, [M.F.'s] moved out, [M.F.] moved into a camper somewhere in Port Allegheny, but she would state that, "She doesn't know exactly where the camper was or where he was

staying or didn't have a contact number," and then it was later found through [Father] that [M.F.] was actually staying with [Mother] still or through other supportive services that [M.F.] was actually at the house. Mother would state to me that, "[M.F.] was back there because [M.F.] didn't have a place to stay. He got kicked out of where he was staying at the camper." Then Mother had told me that he was moving South and then it was later found out from [Father] that Mother and [M.F.] were stating that he was moving somewhere to Michigan, but then family members were stating that [M.F.] and [Mother] were staying—**they were trying to fool [CYS] and the court in order to get the children back.**

(*Id.* at 49-50) (emphasis added). Importantly, Ms. Murray reiterated that M.F. could not be around Children if Mother wanted to move forward with reunification. (*Id.* at 51). To this end, Mother could not participate in visitation with Children in her own home because of her continued contact with M.F. (*Id.*)

Ms. Murray also testified about Children's relationship with their foster mother, B.M. Ms. Murray explained that Children want to be adopted by B.M., and that "they have a home there, that they're comfortable there, they have their friends there." (*Id.* at 53). Ms. Murray also opined that termination would best serve Children's developmental, physical, and emotional needs:

[Mother] continues to put her relationship with [M.F.] before the girls. [M.F.] has been deemed by the [court] as not appropriate to be around the girls. And, therefore, she's putting that as a priority over the girls. The girls have adjusted to [B.M.'s] foster home and they have a relationship and have bonded with [B.M.]. They consider [B.M.] as a mom as well.

(*Id.* at 54).

- 11 -

The court accurately summarized the evidence of record as follows:

> Mother has made no progress alleviating the conditions that necessitated [Children's] initial placement. The court found that [M.F.] has sexually abused [Children]. Mother has completely ignored these findings and has ignored that [M.F.] committed prior criminal acts that require him to register as a sex offender. She has kept up her defiant attitude and refused to undertake efforts to assure that [M.F.] will not be in contact with [Children] and will not have the opportunity to abuse them again. She has also undertaken efforts to conceal her relationship with [M.F.] and has promoted and allowed the girls to have contact with him. Mother's attitude and unwillingness to protect [Children] has not and will not change. There has been no progress here and [Children] need permanency. They are very bonded to [B.M.] and she has provided exceptional care for them. She will adopt them if that is an option. [Children] do have a bond with Mother. However, they do not turn to her for parental support. They, and the court, recognize that, due to [B.M.'s] openness to continued contact, they can maintain their relationship with Mother while at the same time having proper parental care, supervision and protection from [B.M.].

(Trial Court Opinion at docket No. 42-21-0279 at 10-11). On this record, the court correctly determined that the conditions which led to removal and placement of Children continue to exist, and termination of Mother's parental rights would best serve Children's needs and welfare. *See In re Z.P., supra*.

While Mother wants to be a part of Children's lives, she has prioritized her relationship with M.F. over her relationships with Children. Mother is simply unable to accept that she cannot provide for Children's needs and welfare while M.F. remains with the family. Here, terminating Mother's parental rights would not destroy a necessary and beneficial relationship for Children. *Id.* Thus, the record supports the court's conclusion that clear and

convincing evidence supported termination of Mother's parental rights under Sections 2511(a)(5) and (b). Consequently, we affirm the decrees terminating Mother's parental rights to Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2022